**PANAKOS LAW, APC**
Aaron D. Sadock (SBN 282131)
Veronica E. McKnight (SBN 306562)
555 West Beech Street, Suite 500
San Diego, California 92101
Telephone:  (619) 800-0529
Facsimile:   (866) 365-4856
asadock@panakoslaw.com
bmcknight@panakoslaw.com

Attorneys for Plaintiff JENNIFER MARQUEZ

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER MARQUEZ, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>MANOJ CHAWLA an individual; OCEANIC MARINA L.P., a California Limited Partnership; OCNIC MARINA LLC, a California Limited Liability Company; OCEANIC ENTERPRISES LLC, a California Limited Liability Company<br><br>Defendants | Case No. **'22CV1818 L    JLB**<br><br>**UNLIMITED CIVIL ACTION**<br><br>**COMPLAINT FOR:**<br><br>1. **VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5(B) PROMULGATED THEREUNDER**<br>2. **FRAUDULENT MISREPRESENTATION**<br>3. **NEGLIGENT MISREPRESENTATION**<br>4. **PROMISSORY ESTOPPEL**<br>5. **BREACH OF ORAL CONTRACT**<br>6. **CONVERSION**<br>7. **ACCOUNTING**<br>8. **BREACH OF FIDUCIARY DUTY OF LOYALTY**<br><br>**DEMAND FOR JURY TRIAL** |

NOW COMES Plaintiff JENNIFER MARQUEZ ("Plaintiff") by and through her undersigned counsel, and for her Complaint against Defendants MANOJ CHAWLA, OCEANIC MARINA L.P, OCNIC MARINA LLC, and OCEANIC ENTERPRISES LLC, (collectively, "Defendants"), states as follows:

## **INTRODUCTION**

1.     This litigation arises out of a fraudulent scheme propagated and conducted by defendant Mr. Manoj Chawla ("Chawla") against Plaintiff in connection with the purchase and sale of securities of Defendant Oceanic Marina L.P. ("Oceanic Marina") and Chawla's subsequent efforts to financially enrich himself through acts of deceit in breach of his duties to Plaintiff through her 5% limited partnership interest in Oceanic Marina (the "Oceanic Marina Interest").

2.     In 2016, Chawla fraudulently induced Plaintiff to purchase Oceanic Marina securities by providing Plaintiff with pro forma financial statements created solely to mislead Plaintiff into believing that her investment would give her a 5% ownership stake and a 9% preferred return on her investment.

3.     The pro forma financial statements Chawla provided to Plaintiff on February 8, 2016 represented an expectation that there would be hundreds of thousands of dollars in profits to which Plaintiff would be the beneficiary if she chose to invest in the Oceanic Marina securities.

4.     Meanwhile, in a civil action filed just two months prior to delivery of the above-referenced pro forma financial statements, Chawla and Oceanic Marina were engaged in litigation with a family member over Oceanic Marina's right to purchase the La Jolla Inn, with the family member alleging that Chawla had purchased the La Jolla Inn in violation of his contractual obligation to such family member (the "La Jolla Inn Litigation").

5.     The La Jolla Inn Litigation was not disclosed to Plaintiff at any time during the solicitation of her investment, nor at the time of delivery of investment funds paid in consideration of her investment funds and Plaintiff only recently

discovered its occurrence.

6.    The undisclosed La Jolla Inn Litigation continued through to 2019 and materially harmed Oceanic Marina's operations, resulting in significant losses reported each year since Oceanic Marina's inception in 2016.

7.    Further, Chawla elected to circumvent the building permit process when making improvements to La Jolla Inn, which resulted in countless delays due to non-compliance.

8.    In February 2022, Chawla alleged that he "and his entities" had contributed $7,802,209.00 to Oceanic Marina since 2017 and demanded that Plaintiff contribute an additional $433,460.50 lest her ownership stake in Oceanic Marina be diluted to a fraction of its present value.

9.    This demand surprised Plaintiff as Chawla had not provided any notice to Plaintiff that he had made significant capital contributions to Oceanic Marina, nor any notice that there were any transactions between Oceanic Marina and Chawla's other businesses. Additionally, the financial records for years past affirmatively indicated that none of what he stated had occurred. It was only at this point that Plaintiff became aware of Chawla's engagement in significant self-dealing to Plaintiff's detriment.

10.   In May of 2022, Plaintiff reasonably asked for clarification regarding these discrepancies in order to evaluate the value of her ownership stake. Chawla immediately refused to engage with Plaintiff's inquiries and her requests were met with radio silence.

11.   In late August 2022, Oceanic Marina's CPA provided Plaintiff with a Form K-1 for the tax year ending 2021. The Form K-1 indicated that Plaintiff's Oceanic Marina Interest had already been diluted to a percentage even lower than that which Chawla previously threatened despite Chawla's first mention of a capital call not having occurred until February 2022.

///

12.     This dilution was a malicious retaliation for Plaintiff's reasonable inquiry into the discrepancies contained in Oceanic Marina's financial statements. Chawla used this fraudulent K-1 to manufacture a false sense of urgency considering the impending tax deadline, placing Plaintiff under duress to coerce her to assent to the diluted Oceanic Marina Interest.

13.     Since fraudulently procuring Plaintiff's investment, Chawla has denied Plaintiff's right to her promised 9% preferred return, actively concealed significant transactions with other businesses owned by Chawla, commingled Oceanic Marina's assets with those of other businesses owned by Chawla, misrepresented the true financial condition of the company, and generally grossly mismanaged Oceanic Marina's operations

14.     Chawla has engaged in self-dealing with other businesses "off the books," keeping open his options to characterize such transactions in a manner most favorable to him. As soon as real estate property values skyrocketed, Chawla simultaneously waged a campaign of coercion to induce Plaintiff into contributing additional cash while actively denying her accurate material information necessary to establish the true value of the ownership stake in question, in breach of both the law and Chawla's duties to Plaintiff.

## THE PARTIES

15.     At all times mentioned herein, Plaintiff Jennifer Marquez ("Plaintiff") is an individual residing in the County of Mesa, State of Colorado.

16.     At all times mentioned herein, Defendant Manoj Chawla ("Chawla") is an individual residing in the County of San Diego, State of California, and is the Manager of Defendant Ocnic Marina LLC, which is the General Partner of Defendant Oceanic Marina L.P.

17.     At all times mentioned herein, Defendant Oceanic Marina L.P. ("Oceanic Marina") is a California Limited Partnership with its principal place of business in San Diego County, State of California.

18.     At all times mentioned herein, Defendant Ocnic Marina LLC is a California Limited Liability Company with its principal place of business in San Diego County, State of California.

19.     At all times mentioned herein, Defendant Oceanic Enterprises LLC is a California Limited Liability Company, with its principal place of business in San Diego County, State of California.

20.     Plaintiff is further informed and believes and thereon alleges that at the relevant times mentioned in this Complaint, defendants, and each of them, were and are the agents, joint venturers, partners, principals, employees, subsidiaries, subcontractors, servants, associates and/or successors in interest of each of the other defendants, and that at all times mentioned herein, were acting within the course and scope of that agency, employment or other relationship with the full knowledge, notice, consent and ratification of each of the other defendants.

## JURISDICTION AND VENUE

21.     The claims of the Plaintiff arise under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78(j)(b) and 78(t), and Rule 10b-5 promulgated thereunder; and under §§11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act").

22.     Jurisdiction is conferred by §27 of the Exchange Act, and 28 U.S.C. §1331, as well as by §22 of the Securities Act.

23.     Venue is proper in the United States District Court for the Southern District of California (the "District") because acts complained of herein occurred in part in the District and because the Defendants reside in this District. 28 U.S.C. § 1391(b)(1), (2).

## FACTUAL ALLEGATIONS

### A.   PLAINTIFF'S PURCHASE OF THE OCEANIC MARINA LP LIMITED PARTNERSHIP INTEREST

24.     On October 11, 2014, Plaintiff's husband Eric Marquez ("Eric") was introduced to Chawla via email. Subsequently, Chawla provided Eric with the

opportunity to invest in one of two real estate investment opportunities Chawla was offering through the sale of limited partnership interests. Eric provided Plaintiff with the information pertaining to the investment opportunities and Plaintiff elected to pursue the offering being made through Oceanic Heritage Ridgecrest LP ("Oceanic Ridgecrest").

25.   Plaintiff made the investment and was issued a limited partnership interest in Oceanic Ridgecrest on October 29, 2014.

26.   In or around January of 2016, Chawla disclosed to Eric that the underlying real property asset in Oceanic Ridgecrest would be sold, and Plaintiff would be receiving her share of the profits pursuant to such liquidation.

27.   On January 20, 2016, Eric met with Chawla to discuss other potential investment opportunities in Chawla's portfolio. During this meeting, Chawla first offered Eric and Plaintiff the opportunity to invest in Oceanic Marina.

28.   On January 25, 2016, Eric requested via email from Chawla pro forma financial statements for Oceanic Marina (the "Oceanic Marina Pro Formas"), which Chawla delivered via email to Eric on February 8, 2016.

29.   Line 118 of the Oceanic Marina Pro Formas indicated that the investment would garner a preferred return of 9%.

30.   Section 2.12 of the Oceanic Heritage Ridgecrest Limited Partnership Agreement defines "Preferred Return" (in pertinent part) as: "With respect to each limited partner, a ten percent (10%) return per annum (not compounded) on such Member's average daily balance of Unreturned Capital Contributions, to the extent unpaid."

31.   Section 4.1.1(a) of the Oceanic Heritage Ridgecrest Limited Partnership Agreement dictates that the first priority in distributions shall be "first to all limited partners in proportion to their respective Unpaid preferred returns until the unpaid preferred return to each limited partner is reduced to zero."

///

32.    Plaintiff reasonably believed, based on the representation Chawla made pursuant to the Oceanic Marina Pro Formas and her understanding of a preferred return based on her prior investment with Oceanic Ridgecrest, that were she to invest in Oceanic Marina, her investment would garner a 9% return per annum that would be paid pursuant to distributions as a first priority (the "Preferred Return").

33.    In or around April of 2016, Chawla informed Eric that the underlying real property asset in Oceanic Ridgecrest was sold and the Plaintiff's limited partnership interest would result in a distribution of $117,478.35 to Plaintiff. Chawla also informed Eric that if Plaintiff wanted to invest $100,000.00 in Oceanic Marina, then Plaintiff could receive $17,478.35 in cash and Chawla would reinvest the remaining $100,000.00 otherwise due to Plaintiff in Oceanic Marina in consideration of the Oceanic Marina Interest.

34.    On July 13, 2016, Chawla sent an email to Eric stating "[t]otal contribution in la [sic] Jolla is $2m. Heritage partners own 51.1% and [Plaintiff] will own 5%," based on Eric's previous indication that Plaintiff intended to invest $100,000.00 in Oceanic Marina.

35.    On or around July 14, 2016, Plaintiff entered into an oral agreement whereby $100,000.00 of the proceeds otherwise distributable to Plaintiff were reinvested into Oceanic Marina in consideration of issuance to Plaintiff of the Oceanic Marina Interest (the "Oral Agreement").

36.    Plaintiff entered into this Oral Agreement with the understanding that she would receive a 5% limited partnership interest in Oceanic Marina and would earn the 9% Preferred Return.

///
///
///
///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.     CHAWLA'S     FRAUDULENT     MISREPRESENTATIONS, WHICH   INDUCED   PLAINTIFF   TO   PURCHASE   THE OCEANIC MARINA LP LIMITED PARTNERSHIP INTEREST**
*The Undisclosed La Jolla Inn Litigation:*

37.     On December 3, 2015, the La Jolla Inn Litigation was initiated by a third party through the filing of a complaint against Chawla, Ocnic Marina LLC, and Oceanic Marina regarding the right of Chawla and/or Oceanic Marina to purchase the La Jolla Inn, the underlying real property asset in Oceanic Marina.

38.     In order to ensure that Plaintiff would not be dissuaded from investing her $100,000.00 into Oceanic Marina, Chawla concealed the ongoing litigation initiated against Chawla and Oceanic Marina from Plaintiff.

39.     Plaintiff independently learned about the La Jolla Inn Litigation in October 2022 while conducting due diligence pursuant to this litigation.

*Misleading Projections Contained Within the Pro Formas:*

40.     Chawla and Oceanic Marina also provided false and misleading projections.

41.     Specifically, through the Oceanic Marina Pro Formas, Chawla provided false and misleading projections that there would be (i) net operating income of $661,347 and "net cash flow available for distribution" of $213,854 (including $180,000 in Preferred Returns) in "year 2" (which would correspond to 2017); (ii) net operating income of $787,318 and "net cash flow available for distribution" of $339,824 (including $178,477 in Preferred Returns) in "year 3" (which would correspond to 2018); (iii) net operating income of $825,004 and "net cash flow available for distribution" of $377,510 (including $172,739 in Preferred Returns) in "year 4" (which would correspond to 2019); (iv) net operating income of $887,627 and "net cash flow available for distribution" of $440,133 (including $170,785 in Preferred Returns) in "year 5" (which would correspond to 2020); and (v) net operating income of $935,770 and "net cash flow available for distribution"

of $488,276 (including $167,879 in Preferred Returns) in "year 6" (which would correspond to 2021).

42.     Plaintiff relied on these projections when she invested into Oceanic Marina and believed that Chawla would perform based on Plaintiff's prior investment with Oceanic Ridgecrest.

43.     Moreover, Chawla deviated from the plan disclosed to Plaintiff at the time of investment, which was that Oceanic Marina would renovate underperforming hotels, develop a track record of profitability, and then sell the hotel.

44.     Instead, Chawla elected to put a hotel bar on the roof of the La Jolla Inn and completely mismanaged the renovation process along the way by trying to circumvent the building permit process when making improvements, causing delays in completion.

45.     Chawla's tendency to cut corners throughout this process delayed the completion of the renovations for at least a year, resulting in increased costs and delays in opening the hotel to the public.

46.     In part due to the undisclosed La Jolla Inn Litigation and in part due to Chawla's blundering attempts to circumvent regulation, Oceanic Marina significantly underperformed the financial projection representations made by Chawla pursuant to the Oceanic Marina Pro Formas.

47.     Specifically, despite projecting hundreds of thousands of dollars in distributable income by 2017 in the Oceanic Marina Pro Formas, Oceanic Marina reported hundreds of thousands of dollars in losses each year, as reflected in its profit and loss statements.

48.     Additionally, the Oceanic Marina Pro Formas fraudulently misrepresented that investors would be the beneficiaries of a "Preferred Return" of 9%.

///

49.   To date, Oceanic Marina has failed to deliver a profit distribution to Plaintiff.

50.   On information and belief, despite reporting millions of dollars in losses, Oceanic Marina has made profit distributions of an unknown amount to Chawla and his affiliated companies, in violation of Oceanic Marina's obligation to provide Plaintiff with the Preferred Return.

## C.   PLAINTIFF'S RIGHT OF INSPECTION

51.   Cal. Corp. Code § 15903.04 states "a limited partner may obtain from the limited partnership, which may be transmitted via electronic transmission, and inspect and copy true and full information regarding the state of the activities and financial condition of the limited partnership and other information regarding the activities of the limited partnership" (the "Right of Inspection").

52.   Plaintiff is and has been a limited partner in Oceanic Marina since entering into the Oral Agreement on July 14, 2016 and requested access to information regarding the activities of the limited partnership (the "Books and Records") with the express purpose of determining the value of the Oceanic Marina Interest in light of the capital call.

53.   However, Chawla never fulfilled his obligations and did not provide the Books and Records to Plaintiff as requested.

## D.   CHAWLA DEMANDS CAPITAL CALL AND ENGAGES IN SUPPRESSION OF MATERIAL OCEANIC MARINA INFORMATION

54.   On February 6, 2022, Chawla informed Eric that Chawla had "contributed an additional 7.8m to the la jolla [sic] property" and asked if Plaintiff would "contribute [her] share or prefer to be diluted." Chawla's request was in breach of Oceanic Marina's obligations if it elected to make a dilutive issuance.

55.   On March 24, 2022, Plaintiff made a request for inspection of Books and Records pursuant to the Right of Inspection to determine the value of her interest.

56.    On April 4, 2022, Chawla delivered: (i) the tax returns for Oceanic Marina LP for fiscal year end 2016 through 2020 and (ii) an unsigned copy of the Oceanic Marina LP Limited Partnership Agreement. However, Chawla was deliberately unresponsive to the balance of the request sent on March 24, 2022, including a request to provide the Books and Records of Oceanic Marina.

57.    On April 7, 2022, Plaintiff responded to Chawla to: (i) articulate the deficiencies in the April 4, 2022 response; (ii) confirm that the list of limited partners was solely limited to Oceanic Marina LLC, Manoj Chawla, Priyanka Chawla, Jennifer Marquez, and Sunflower 33 Management LP; and (iii) confirm that there was no copy of the Oceanic Marina LP Limited Partnership Agreement signed by Plaintiff.

58.    On April 20, 2022, Chawla confirmed that (i) the list of limited partners was solely limited to Oceanic Marina LLC, Manoj Chawla, Priyanka Chawla, Jennifer Marquez, and Sunflower 33 Management LP; and (iii) there was no copy of the Oceanic Marina LP Limited Partnership Agreement signed by Plaintiff.

59.    On April 25, 2022, only after Plaintiff asserted her Right of Inspection multiple times, Chawla delivered to Plaintiff: (i) balance sheets for fiscal years ending 2016 through 2020; and (ii) income statements for fiscal years ending 2016 through 2020. On May 2, 2022, Chawla provided such financial statements dated November 30, 2021 only after Plaintiff identified the lack of production in writing made an additional final request.

**E.    CONFLICTS WITHIN FINANCIAL RECORDS PROVIDED BY CHAWLA AND CHAWLA'S REFUSAL TO PROVIDE REPRESENTATIVE INFORMATION REGARDING THE FINANCIAL CONDITION OF OCEANIC MARINA**

60.    Although Chawla provided some limited financial information to Plaintiff, the financial statements provided on April 25, 2022 and May 2, 2022 were purposefully inaccurate, misleading, and incomplete. Such financial

statements also directly conflicted Chawla's representation that he had "contributed an additional 7.8m" into Oceanic Marina.

61. The Oceanic Marina balance sheet for fiscal year end 2021 did not include any debt owed to Chawla nor any of Chawla's affiliated entities aside from a line item for $122,773.24 "due to Manoj."

62. Additionally, the Oceanic Marina balance sheet for fiscal year end 2021 included several line items under the "Equity" section of third parties that were not included in the confirmed list of limited partners including "Mikami," "Star," "SLO," "Enterprises," "San Ysidro," "El Cajon," "San Diego LP," "Antelop," and "Oceanic Companies."

63. On information and belief, Mikami," "Star," "SLO," "Enterprises," "San Ysidro," "El Cajon," "San Diego LP," "Antelop," and "Oceanic Companies" are affiliated entities of Chawla.

64. After review of the financial statements, Plaintiff articulated concern through counsel on a telephone call with regard to the confusing nature of the balance sheet for fiscal year end 2021 provided on May 2, 2022.

65. On May 18, 2022, Chawla delivered to Plaintiff two Microsoft Excel files titled "Copy of 2021 Oceanic Marina summary of fixed asset additions" and "Copy of Oceanic Marina summary of capital contributions."

66. These two files contained multiple spreadsheets that were deliberately misleading as they contained information that both conflicted with the representation made by Chawla that he had "contributed an additional 7.8m" into Oceanic Marina and the balance sheet for fiscal year end 2021 provided on May 2, 2022.

67. The files provided on May 18, 2022 referred simultaneously to "cumulative Manoj loans" and "asset contributions" from third parties that were not limited partners in Oceanic Marina.

///

68.     On information and belief, the third parties that made the "asset contributions" are affiliated entities of Chawla with which he engaged in self-dealing.

69.     Included in the files provided on May 18, 2022 was a copy of the Oceanic Marina balance sheet similar to the balance sheet provided on May 2, 2022, but with different information, including: (i) several different companies having made capital contributions to Oceanic Marina; and (ii) an additional $3,218,200.12 in current liabilities owed to Chawla's affiliated entities.

70.     On information and belief, the third parties listed on the balance sheet provided on May 18, 2022 are Chawla's affiliated entities with which he engaged in self-dealing.

71.     On May 26, 2022, Plaintiff requested clarification as to these inconsistencies, specifically requesting that Chawla identify (i) loans made by Chawla and the dates on which such loans were made; (ii) capital contributions made by Chawla and the dates on which such capital contributions were made; (iii) loans made by Ocnic Marina LLC and the dates on which such loans were made; (ii) capital contributions made by Ocnic Marina LLC and the dates on which such capital contributions were made.

72.     When Chawla ignored Plaintiff's May 26, 2022 correspondence, Plaintiff followed up via email on June 14, 2022, but Chawla continued to ignore her.

73.     On June 28, 2022, Plaintiff followed up via email (i) requesting a response to the May 26, 2022 correspondence; (ii) articulating Plaintiff's expectation that it would receive a 9% preferred return pursuant to the representations made by Chawla in the Oceanic Marina Pro Formas; and (iii) reiterating Chawla's failure to adhere to his obligation under the Preemptive Rights.

///

74.     In the June 28, 2022 correspondence, Plaintiff requested that if Chawla had any objection to his obligations identified, he provide a basis in writing on or before July 8, 2022.

75.     Chawla, continuing his pattern of suppressing Oceanic Marina's material financial information, ignored Plaintiff's June 28, 2022 correspondence.

76.     Finally, on August 8, 2022, Eric received a text message from Chawla in which Chawla stated, "[j]ust checking in to see where we stand" without acknowledging Plaintiff's multiple requests for material financial information in the previous months.

77.     On August 9, 2022, Plaintiff responded via email reiterating her request for clarification on the issues in the May 26, 2022 correspondence, identifying that as a "bottleneck to understanding the value of her ownership." However, Chawla once again deliberately ignored the August 9, 2022 correspondence.

78.     On August 31, 2022, Plaintiff received an email from Oceanic Marina's CPA with a link to download Plaintiff's Form K-1 related to her Oceanic Marina Interest as of fiscal year end 2021 (the "2021 Form K-1").

79.     Through the delivery of the 2021 Form K-1, Plaintiff discovered that Chawla had diluted Plaintiff's Oceanic Marina Interest from 5.00% to 0.51% during the fiscal year ending December 31, 2021 despite the fact that (i) the first time Chawla provided notice of the purported capital call was February 6, 2022; and (ii) Chawla represented to Plaintiff that Plaintiff's Oceanic Marina Interest would be diluted to 0.56% if she chose not to accede to his demand for $433,460.50.

///

///

///

///

**F.    CHAWLA'S OVERT CONCEALMENT OF SELF-DEALING THROUGH FAILURE TO MAINTAIN BOOKS AND RECORDS BOTH IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES AND GENERALLY**

80.    Generally Accepted Accounting Principles ("GAAP") literature governing related party transactions, including the Financial Accounting Standards Board ("FASB") Accounting Standards Codification 850 ("ASC 850"), required Oceanic Marina to disclose to Plaintiff any and all related party transactions between Oceanic Marina and its affiliates that were relevant to Plaintiff's interests.

81.    Chawla, by his own admission, caused Oceanic Marina to enter into several transactions with his affiliated entities, in a manner that is clearly a related-party transaction for purposes of Oceanic Marina's GAAP reporting requirements to Plaintiff.

82.    Oceanic Marina violated GAAP (i) by failing to disclose to Plaintiff that it had entered into several transactions with Chawla's affiliated entities, and (ii) by failing to disclose the nature of such related-party transactions.

83.    Despite Plaintiff's repeated requests for clarity surrounding Oceanic Marina's violation of GAAP, Chawla refused to engage with Plaintiff to answer her reasonable line of inquiry to determine the true value of the Oceanic Marina Interest.

84.    Chawla deliberately never delivered balance sheets and/or income statements at the end of any fiscal year to Plaintiff since Plaintiff became a limited partner of Oceanic Marina in order to keep Plaintiff from seeing the financial condition of Oceanic Marina and Chawla's pattern of self-dealing. Therefore, Plaintiff did not discover these transactions until May 18, 2022 when Chawla sent the balance sheet to Plaintiff that listed several of Chawla's affiliated entities as equity holders and debtors of Oceanic Marina.

85.    On information and belief, from 2017 through 2022, Chawla engaged in self-dealing with his affiliated entities to provide cash to Oceanic Marina

without recording such transactions, nor providing notice to the limited partners until the underlying real estate asset unexpectedly sharply increased in value due to changes in the market.

86.    On information and belief, once the underlying real estate asset increased in value, and since Chawla would only be permitted to earn 2% over the prime lending rate of Bank of America were he to classify the transactions as loans, Chawla took advantage of the "off the books" nature of the self-dealing and elected to re-frame the transfer of assets from affiliated entities as capital contributions since the market shift presented Chawla with an opportunity to capture such value for himself to the detriment of Plaintiff.

### ALTER EGO ALLEGATIONS
### (OCEANIC MARINA LP, OCNIC MARINA LLC, OCEANIC ENTERPRISES LLC, AND MANOJ CHAWLA)

87.    Plaintiff alleges that corporate defendants Oceanic Marina, Ocnic Marina LLC, and Oceanic Enterprises LLC are and at all times herein mentioned were, alter ego corporations of individual Defendant Manoj Chawla by reason of the following:

      a. At all times herein mentioned herein, Chawla dominated, influenced, and controlled Oceanic Marina, Ocnic Marina LLC, and Oceanic Enterprises LLC and their business, property, and affairs.

      b. Currently and at all times mentioned herein, Defendant Chawla has shared a unity of interest with Oceanic Marina, Ocnic Marina LLC, and Oceanic Enterprises LLC, any individuality and separateness between them have ceased, and to hold only Oceanic Marina liable would promote injustice.

      c. The wrongful conduct of Oceanic Marina, discussed in detail herein, has primarily benefitted Chawla both directly and through his ownership of Ocnic Marina LLC and Oceanic Enterprises LLC.

d.  At all times since their organization, Ocnic Marina LLC, and Oceanic Enterprises LLC have been mere shells and shams without capital or assets, which Defendant Chawla used as a conduit to conduct his personal business, property, and affairs.

e.  At all times mentioned herein, Oceanic Marina, Ocnic Marina LLC, and Oceanic Enterprises LLC were created and continued pursuant to a fraudulent plan, scheme, and device conceived and operated by Defendant Chawla where the income, revenue and profits of Oceanic Marina were diverted to Defendant Chawla directly.

f.  At all times mentioned herein, Oceanic Marina, Ocnic Marina LLC, and Oceanic Enterprises LLC were organized by Defendant Chawla as a device to avoid individual liability and for the purpose of substituting financially irresponsible corporations in the place and stead of Defendant Chawla.

g.  At all times mentioned herein, Oceanic Marina, Ocnic Marina LLC, and Oceanic Enterprises LLC were formed by Defendant Chawla with capitalization totally inadequate for the business in which each company was engaged.

h.  Under the circumstances, allowing the fiction of the separate corporate existences of Oceanic Marina, Ocnic Marina LLC, and Oceanic Enterprises LLC to persist would sanction a fraud and promote injustice in that Plaintiff would be unable to enforce any judgment in her favor.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT
## AND RULE 10B-5(B)
## (PLAINTIFF AGAINST ALL DEFENDANTS)

88.    Plaintiff realleges and incorporates by reference all preceding

1  paragraphs as though fully alleged herein.

2      89.   Defendant Chawla, on behalf of himself, and as agent of Oceanic

3  Marina and Ocnic Marina LLC (the "Oceanic Marina Defendants"), deceived

4  Plaintiff, and in so doing caused Plaintiff to purchase the Oceanic Marina Interest,

5  including, but not limited to, the following: (a) failing to disclose the La Jolla Inn

6  Litigation; (b) fraudulently misrepresenting the anticipated future profits of

7  Oceanic Marina; (c) fraudulently misrepresenting anticipated profit distributions to

8  Plaintiff by Oceanic Marina; (d) fraudulently misrepresenting that Plaintiff would

9  receive the Preferred Return; and (e) fraudulently concealing plans to engage in

10  self-dealing.

11      90.   Defendant Chawla, on behalf of himself, and as agent of Oceanic

12  Marina Defendants, made untrue statements of material fact and/or omitted to state

13  material facts necessary to make the statements made not misleading, and/or

14  substantially participated in the creation of the alleged misrepresentations, which

15  operated as a fraud and deceit upon Plaintiff in connection with its purchase of the

16  Oceanic Marina Interest and in violation of Section 10(b) of the Exchange Act and

17  Rule 10b-5(b).

18      91.   Defendant Chawla, on behalf of himself, and as agent of Oceanic

19  Marina Defendants, directly and indirectly, by the use of means and

20  instrumentalities of interstate commerce and/or the mails, made, or substantially

21  participated in the creation of, untrue statements of material facts and/or omitted to

22  state material facts necessary in order to make the statements made about the

23  Oceanic Marina investment in light of the circumstances under which they were

24  made, not misleading, as set forth herein.

25      92.   Defendant Chawla, on behalf of himself, and as agent of Oceanic

26  Marina Defendants, had actual knowledge of the misrepresentations and omissions

27  of material facts set forth herein, or acted with reckless disregard for the truth in

28  that they failed to ascertain and to disclose such facts, even though such facts were

1  unavailable to them.

2      93.    The facts alleged herein set forth a strong inference that each of the

3  Defendants acted with scienter.

4      94.    Each of Defendants had a strong motive to engage in the fraudulent

5  scheme set forth herein. Namely, to obtain Plaintiff's capital investment in Oceanic

6  Marina.

7      95.    By reason of the foregoing, the Defendants have violated Section

8  10(b) of the Exchange Act and Rule 10b-5(b), promulgated thereunder and are

9  liable to the Plaintiff for damages which they suffered in connection with their

10  purchase of the Oceanic Marina Interest.

11                **SECOND CLAIM FOR RELIEF**

12      **FRAUDULENT MISREPRESENTATION AND OMISSION**

13          **(PLAINTIFF AGAINST ALL DEFENDANTS)**

14     96.    Plaintiff realleges and incorporates by reference the allegations

15  contained in the preceding paragraphs of this Complaint, as though fully set forth

16  herein.

17     97.    Defendant Chawla, on behalf of himself, and as agent of the Oceanic

18  Marina Defendants, intentionally misrepresented and omitted material facts to

19  Plaintiff and in so doing caused Plaintiff to purchase the Oceanic Marina Interest,

20  including, but not limited to, the following: (a) misrepresenting the anticipated

21  future profits of Oceanic Marina in light of the undisclosed La Jolla Inn Litigation;

22  (b) misrepresenting anticipated profit distributions to Plaintiff by Oceanic Marina

23  in light of the undisclosed La Jolla Inn Litigation; and (c) misrepresenting that

24  Plaintiff would receive the Preferred Return.

25     98.    Defendant Chawla's representations were false.

26     99.    Defendant Chawla knew that the representations were false when

27  Defendant Chawla made them.

28     100.    Defendant Chawla intended that Plaintiff rely on the intentional

misrepresentations when deciding to invest in Oceanic Marina.

101.   Plaintiff reasonably relied upon Defendant Chawla's intentional misrepresentations when deciding to invest in Oceanic Marina and could not have reasonably discovered the truth because Defendant Chawla withheld all relevant information.

102.   Plaintiff suffered damages in an amount to be proven at trial, but not less than $100,000.00, the amount invested in Oceanic Marina.

103.   Plaintiff's damages were a direct and proximate result of Defendant Chawla's intentional misrepresentations.

104.   Further, Chawla and the Oceanic Marina Defendants have unlawfully profited from their wrongful conduct and breach of fiduciary duty, thus rendering them liable to disgorge any benefits emanating from their breach to Plaintiff.

105.   Given the fraudulent, malicious, and oppressive nature of Defendant Chawla's conduct described above, Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### NEGLIGENT MISREPRESENTATION
### (PLAINTIFF AGAINST ALL DEFENDANTS)

106.   Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

107.   Defendant Chawla, on behalf of himself, and as agent of the Oceanic Marina Defendants, intentionally misrepresented material facts to Plaintiff and in so doing caused Plaintiff to purchase the Oceanic Marina Interest, including, but not limited to: (a) misrepresenting the anticipated future profits of Oceanic Marina in light of the undisclosed La Jolla Inn Litigation; (b) misrepresenting anticipated profit distributions to Plaintiff by Oceanic Marina in light of the undisclosed La Jolla Inn Litigation; and (c) misrepresenting that Plaintiff would receive the

1  Preferred Return.

2       108.   Defendant Chawla's representations were false.

3       109.   Although Defendant Chawla may have honestly believed that the

4  representations were true, Defendant Chawla had no reasonable grounds for

5  believing the representations were true when Defendant Chawla made them.

6       110.   Defendant Chawla intended that Plaintiff rely on the negligent

7  misrepresentations when deciding to invest in Oceanic Marina.

8       111.   Plaintiff reasonably relied upon Defendant Chawla's negligent

9  misrepresentations when deciding to invest in Oceanic Marina.

10      112.   Plaintiff suffered damages in an amount to be proven at trial, but not

11 less than $100,000.00, the amount invested in Oceanic Marina.

12      113.   Plaintiff's damages were a direct and proximate result of Defendant

13 Chawla's negligent misrepresentations.

14                    **FOURTH CLAIM FOR RELIEF**

15                         **FALSE PROMISE**

16             **(PLAINTIFF AGAINST ALL DEFENDANTS)**

17      114.   Plaintiff realleges and incorporates by reference the allegations

18 contained in the preceding paragraphs of this Complaint, as though fully set forth

19 herein.

20      115.   Defendant Chawla, on behalf of himself, and as agent of Oceanic

21 Marina Defendants, represented to Plaintiff that she would receive the Preferred

22 Return pursuant to her investment in Oceanic Marina.

23      116.   Defendant Chawla did not intend to provide Plaintiff with the

24 Preferred Return pursuant to her investment in Oceanic Marina when he made the

25 representation to Plaintiff.

26      117.   Defendant Chawla intended that Plaintiff rely on this promise when

27 deciding to invest in Oceanic Marina.

28      118.   Plaintiff reasonably relied on Defendant Chawla's promise when

deciding to invest in Oceanic Marina.

119.   Both Defendant Chawla and the Oceanic Defendants have denied Plaintiff of the Preferred Return.

120.   Plaintiff suffered damages in an amount to be proven at trial, but not less than $100,000.00, the amount invested in Oceanic Marina.

121.   Plaintiff's damages were a direct and proximate result of Plaintiff's reliance on Defendant Chawla's promise that Plaintiff would receive the Preferred Return pursuant to her investment in Oceanic Marina.

### FIFTH CLAIM FOR RELIEF
### BREACH OF ORAL CONTRACT
### (PLAINTIFF AGAINST OCEANIC MARINA)

122.   Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

123.   Plaintiff invested $100,000.00 in Oceanic Marina in consideration of the Oceanic Marina Interest based on the oral proposal made by Chawla, on behalf of Oceanic Marina, pursuant to (i) the Oceanic Marina Pro Formas provided to Plaintiff by Chawla via email on February 8, 2016; and (ii) the July 13, 2016 email sent by Chawla.

124.   Plaintiff accepted Chawla's proposal on or around July 14, 2016, when she consented to the transfer to Oceanic Marina of $100,000.00 of her cash, thereby entering into the Oral Agreement.

125.   Plaintiff has performed every and all of her obligations under the Oral Agreement.

126.   Oceanic Marina has committed multiple breaches of the Oral Agreement by (i) diluting Plaintiff's Oceanic Marina Interest without providing copies of Books and Records to Plaintiff in breach of Plaintiff's rights under Cal.

Corp. Code § 15903.04; and (ii) failing to provide Plaintiff with the Preferred Return.

127.   Plaintiff suffered damages in an amount to be proven at trial, but not less than $100,000.00, the amount invested in Oceanic Marina.

128.   Oceanic Marina's breach of contract was a substantial factor in causing Plaintiff's harm.

## SIXTH CLAIM FOR RELIEF

## CONVERSION

## (PLAINTIFF AGAINST ALL DEFENDANTS)

129.   Plaintiff realleges and incorporates by reference all prior paragraphs, as though fully set forth herein.

130.   Plaintiff invested $100,000.00 with Defendants, and Plaintiff is entitled to distributions of cash equaling an amount to be determined at trial but no less than $100,000.00.

131.   Through Defendant Chawla's orchestrated efforts, conducted on behalf of himself and the Oceanic Marina Defendants, and the breach of Oceanic Marina's obligation to make cash distributions of funds equal to the accrued Preferred Return prior to making any other distributions by making cash distributions to Defendant Chawla, Defendant Chawla and the Oceanic Marina Defendants have possession, control and dominion over funds not rightfully owned by them.

132.   Plaintiff did not consent to such cash distributions.

133.   Due to such possession, control and dominion over funds not rightfully owned by them, Defendant Chawla and Oceanic Marina harmed the Plaintiff an amount to be determined at trial but no less than $100,000.00.

134.   The possession, control and dominion over funds not rightfully owned by the Oceanic Marina Defendants continues as of the date of the filing of this Complaint.

**SEVENTH CLAIM FOR RELIEF**

**ACCOUNTING**

**(PLAINTIFF AGAINST OCEANIC MARINA)**

135.  Plaintiff realleges and incorporates by reference all prior paragraphs, as though fully set forth herein.

136.  Oceanic Marina has wrongfully withheld from Plaintiff its Books and Records in violation of her rights pursuant to Cal. Corp. Code § 15903.04 and to the extent that such Books and Records were provided, Oceanic Marina has failed to account for transactions with affiliated entities in a manner that complies with GAAP or is even comprehensible.

137.  Plaintiff is informed and believes that the amount of cash distributions that should have been paid by Oceanic Marina to Plaintiff and remains unpaid as well as the amounts subject to disgorgement exceed $100,000.00 but cannot be ascertained without an equitable accounting in accordance with GAAP of Oceanic Marina's operations since its inception since 2016.

**EIGHTH CLAIM FOR RELIEF**

**BREACH OF FIDUCIARY DUTY OF LOYALTY**

**(PLAINTIFF AGAINST ALL DEFENDANTS)**

138.  Plaintiff realleges and incorporates by reference all prior paragraphs, as though fully set forth herein.

139.  As the managing general partner of Oceanic Marina, Ocnic Marina LLC was under an absolute duty to exercise the utmost good faith and loyalty to Plaintiff, including the duty to provide information necessary to allow Plaintiff to accurately value its Oceanic Marina Interest.

140.  Defendant Chawla, on behalf of himself, and as agent of Ocnic Marina LLC, knowingly acted against Plaintiff's interest and violated the relationship of trust and confidence by engaging Oceanic Marina in self-dealing with Defendant's affiliated entities, failing to disclose relevant financial

information in furtherance of concealing such self-dealing, and affirmatively misrepresenting material Oceanic Marina financial information in furtherance of concealing such self-dealing.

141.   As a result of Ocnic Marina's repeated breaches of its fiduciary duty alleged herein, Plaintiff remained ignorant of the true material facts related to Oceanic Marina's financial results and true value while Chawla, both individually and as an agent of Ocnic Marina LLC, engaged in a campaign of coercion culminating in the unilateral dilution of Plaintiff's Oceanic Marina Interest.

142.   Further, Ocnic Marina LLC and Chawla have unlawfully profited from their wrongful conduct and breaches of fiduciary duty and should be compelled to disgorge all benefits emanating from their breach to Plaintiff. In the alternative, Plaintiff is entitled to damages in an amount to be determined at time of trial.

143.   Finally, Ocnic Marina LLC and Chawla's conduct, as herein alleged, was undertaken with a conscious disregard of Plaintiff's rights and with intent to vex, injure, or annoy such as to constitute oppression, fraud, or malice, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish or make an example of Chawla and Ocnic Marina LLC.

## PRAYER

**WHEREFORE**, Plaintiff prays for judgment against Defendants, as follows:

1. Awarding compensatory damages against all of the defendants jointly and severally, in favor of Plaintiff for all losses and damages suffered as a result of defendants' wrongdoing alleged herein, in an amount to be determined at trial, together with interest thereon;

2. Awarding Plaintiff her reasonable costs, and expenses incurred in this action;

3. For exemplary and punitive damages, according to proof at the time of trial;

4. For prejudgment interest;

5. For attorney's fees;

6. For costs of suit herein incurred;

7. For disgorgement of all ill-gotten gains, including profits, compensation, and fees, received by Defendants;

8. For exemplary and punitive damages, according to proof at the time of trial; and

9. For such other and further relief as the court may deem proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Federal Rules of Civil Procedure, Rule 38.

Dated: November 18, 2022                      **PANAKOS LAW, APC**

By:      */s/Aaron D. Sadock*
Aaron D. Sadock, Esq.
Veronica E. McKnight, Esq.
Attorneys for Plaintiff
JENNIFER MARQUEZ